50 N.J. Super. 369 (1958)
142 A.2d 663
CITY OF ENGLEWOOD, IN THE COUNTY OF BERGEN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
VEITH REALTY CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT. CITY OF ENGLEWOOD, IN THE COUNTY OF BERGEN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ELLEN T. McQUILLIN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 5, 1958.
Decided June 6, 1958.
*370 Before Judges PRICE, HANEMAN and SCHETTINO.
Mr. Leroy B. Huckin argued the cause for plaintiff-respondent.
Mr. William V. Breslin argued the cause for defendants-appellants (Mr. William J. Scanlon, on the brief).
The opinion of the court was delivered by SCHETTINO, J.A.D.
This was a condemnation proceeding wherein separate complaints were filed against defendants. Veith Realty and McQuillin, seeking to condemn adjoining parcels of land for use as a municipal parking *371 lot. Condemnation commissioners were appointed by the Superior Court and awards were made to Veith Realty in the sum of $13,500 and to McQuillin of $19,500. Plaintiff appealed and defendants separately cross-appealed.
On December 6, 1957 plaintiff, pursuant to N.J.S.A. 20:1-30, elected to abandon all proceedings. This statute provides in part:
"Any action or proceeding under this chapter may be abandoned at any time before the filing of the report of the commissioners, or within twenty days thereafter, or in the event of an appeal therefrom, before the entry of the judgment on the appeal or within twenty days after the entry thereof, provided there is paid to the owner and any other party who appeared in the action or proceeding, their reasonable costs, expenses and attorney fees as determined by the court, and provided a discharge of the notice of lis pendens is filed."
The trial court, after a hearing that same day, fixed the reasonable costs, expenses and attorney's fees against plaintiff in the amount of $925 for each action  representing $600 attorney's fee and $325 experts' fees. Defendants appeal on the grounds that the amount of attorney's fee fixed in each case was inadequate and an abuse by the trial court of the exercise of its discretion.
The record discloses the following undisputed facts.
The attorney appeals the reasonableness of the award of his counsel fees. He represented both defendants. The course of both trials took a day and one-half. Although from the record it is difficult to break down the exact number of hours spent in conference, it would seem that 12 hours would be a generous allowance. The trial court said at least six or seven, and appellants' attorney did not contest his addition. The record shows that the trial court considered the time counsel had spent in prosecuting his case and his disbursements, the amounts of the commissioners' awards (and although the record indicates that the court considered the McQuillin award to be $9,500 instead of the actual $19,500, appellants' attorney took no exception to this misunderstanding of fact), both attorneys' estimates of what *372 they thought the reasonable cost of expenses should be, the standing of the attorney, the importance of the litigation, the success achieved and the amount involved. Having considered all the circumstances enumerated, the trial court made its awards.
At the oral argument appellants raised for the first time the claim that N.J.S.A. 20:1-30 is unconstitutional under the New Jersey Constitution and the Constitution of the United States if it is not construed to provide for the payment of all the reasonable costs, expenses and attorney's fees of a property owner by the condemning authority. Appellants quote the Constitution of New Jersey, Article I, par. 20, which provides as follows:
"Private property shall not be taken for public use without just compensation. Individuals or private corporations shall not be authorized to take private property for public use without just compensation first made to the owners."
and the Constitution of the United States, Fifth Amendment, which provides in part that no person shall:
"* * * be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."
We gave both counsel an opportunity to submit supplemental memoranda of law.
Appellants' counsel emphasizes that property owners are compelled to hire counsel to defend condemnation proceedings instituted by a condemning authority. They retain counsel and agree to pay him a fee. Counsel prepares the defense, consults with the clients and real estate experts, and actually tries the cases before condemnation commissioners. Then the condemning party appeals and later abandons the condemnation proceedings.
Appellants contend that plaintiff believed that an appeal to a jury would not have substantially reduced the awards or it certainly would have prosecuted the appeals to a conclusion and to a taking, so that in that event it would not *373 have been liable for the payment of any counsel fee or expense to the property owners. Alternatively, appellants argue that plaintiff improperly instituted the condemnation proceedings in the first instance, or that it instituted them without making a proper investigation as to true value, or that it instituted them with the hope that the property owners might be induced to accept a small amount of money rather than go to the expense of litigating the issue of value. They conclude that in any event it was not the property owners' conduct which placed plaintiff in its present dilemma. Appellants continue that at this point the property owners would not be able to resist the decision of a condemning authority to abandon the condemnation proceedings, but that all the property owners could do would be to seek their constitutional right to be made whole for all their expenses including full attorney's fees.
However, appellants continue, they are now faced with a charge for reasonable counsel fee of their attorney far in excess of the amounts awarded by the trial court. Since the attorney is dissatisfied with this allowance, he can institute a suit against his clients for the balance of his fee and obtain judgments against them. If the clients have no other asset with which to satisfy the attorney's judgment other than the identical properties which are the subject matters of condemnation, these properties would have to be sold to satisfy the attorney's judgment. The end result would be that appellants' properties would be taken from them in defiance of the constitutional precepts quoted above. Counsel for appellants states that he has not been able to find any precedent for this situation.
In In re Water Commissioners of Jersey City, 31 N.J.L. 72 (Sup. Ct. 1864), it was held that public authorities might withdraw condemnation proceedings at any time before the confirmation of the award. This decision was said in Mabon v. Halsted, 39 N.J.L. 640 (Sup. Ct. 1877), to have been based upon public policy, that where a public agency was the condemning party, such agency having been empowered to make the purchase for the public good, it should *374 not be forced to conclude it to the public detriment if the award was considered by it to be too high.
In O'Neill v. Board of Chosen Freeholders of Hudson County, 41 N.J.L. 161, 172-173 (E. & A. 1879), the ground of decision in In re Water Commissioners of Jersey City, supra, was said with approval and readoption to be that, whenever land is sought to be taken for a public purpose, the public authorities, in the absence of any statutory provision to the contrary, have a reasonable time given them, after the ascertainment of the expense of the scheme, to decide whether to accept or refuse the land at the price fixed. The court then pointed out that with respect to the landowner such procedure is fair and just, that it calls for a reasonable valuation of his land, and if the public rejects it at that valuation, he suffers in general no detriment. The rule is a necessity in view of the rational conduct of public affairs since, whether a projected improvement is wise or unwise, expedient or inexpedient, cannot be answered by anyone who is ignorant of the total expense involved therein.
It is generally held that a condemning party, upon abandoning eminent domain proceedings, in the absence of statute incurs no liability for counsel fees and disbursements which the property owner has had to incur on account of the condemnation proceedings. 2 McQuillin, Law of Municipal Corporations (3d ed. 1950), p. 424, § 32.77; 31 A.L.R. 352, 353. In Andrus v. The Bay Creek Railway Company, 60 N.J.L. 10, 391 (Sup. Ct. 1896), plaintiff sued defendant, a private corporation, to recover large sums expended in counsel fees and expenses as the result of defendant first instituting proceedings to condemn plaintiff's lands and thereafter abandoning the proceedings. Chief Justice Beasley, in sustaining a demurrer to the complaint, stated (60 N.J.L. at page 11):
"The difficulty with the case laid is that it exhibits a loss to the plaintiff produced by entirely legal conduct on the part of the defendant. It is a clear case of damnum absque injuria. There was no legal wrong done to the plaintiff by the institution of this procedure, nor of its discontinuance. In all this there was no abuse *375 of legal process. That an action will not lie in such a condition of facts has always been the doctrine of the courts of this state. Over 80 years ago it was so declared after full examination of the authorities."
In Kean v. Union County Park Commission, 130 N.J. Eq. 591, 594 (E. & A. 1941), Mr. Justice Colie for the court stated:
"An examination of the opinion filed in the court below indicates that a further ground for the granting of the injunction is that the Keans will be denied their constitutional right of just compensation and will suffer irreparable injury if the 1940 proceeding is allowed to go forward to a conclusion. Respondents herein cite no authority in their brief to sustain the claim of irreparable damage, and we follow the view that the owner of property who suffers damage by reason of condemnation proceedings subsequently legally abandoned does not have a right of action for damages, such loss being damnum absque injuria."
See also 18 Am. Jur., Eminent Domain, payes 1013-1014, § 371. Every property owner holds his property burdened with the right of the government to appropriate it for public uses, and when proceedings to enforce such rights are conducted in a legal manner, special damages suffered by the property owner are a mere incident of ownership, giving no right of action against the municipal corporation. Thus, in the absence of statute, if a property owner was required to incur expenses, or was incidentally injured, it was a case of damnum absque injuria, coming within the universally recognized principle which exempts from liability for loss or damage incidentally resulting from the proper exercise of a legal right. Kanakanui v. United States, 244 F. 923 (9 Cir. 1917).
We must bear in mind the protection accorded the sovereign in the exercise of the power of eminent domain. For example, in Danforth v. United States, 308 U.S. 271, 60 S.Ct. 231, 236, 84 L.Ed. 240, 246 (1939), the court stated:
"* * * Until taking, the condemnor may discontinue or abandon his effort. The determination of the award is an offer subject to acceptance by the condemnor and thus gives to the user of the *376 sovereign power of eminent domain an opportunity to determine whether the valuations leave the cost of completion within his resources. Condemnation is a means by which the sovereign may find out what any piece of property will cost."
We conclude that on the basis of these authorities the constitutional issues raised by appellants have no substance.
Appellants also contend that the statutory words that the condemning party may abandon the proceedings provided there is paid by it to the owners "their reasonable costs, expenses and attorney fees" mean that all of the owners' costs, expenses and attorney's fees are to be paid. However, immediately following the quoted words we find the phrase "as determined by the court." These words, coupled with the word "reasonable," compel us to one conclusion, i.e., that if the Legislature meant to provide for the payment of all costs, expenses and fees, it would have used that word and would certainly have omitted not only the word "reasonable" but also the last quoted phrase. We feel that this point was encompassed by and disposed of in the opinions of Township of Teaneck, Bergen County v. Mercer, 122 N.J.L. 546, 547 (Sup. Ct. 1939), affirmed 124 N.J.L. 120 (E. & A. 1940), and the Texas Pipe Line Co. v. Snelbaker, 33 N.J. Super. 11 (App. Div. 1954).
Finally, we come to the issue of the amount of attorney's fees awarded. Amount of the counsel fees awarded is essentially a matter resting in the exercise of a sound discretion by the trial court. It is a matter of great delicacy and difficulty. Westinghouse Elec. Corp. v. Local No. 449, etc., C.I.O., 23 N.J. 170, 177 (1956). No yardstick is available for the purpose, no standard percentages or per diem rates can be recognized which would be fair to both parties in all cases. Precedents indicate that each case must be judged by its own overall circumstances. The best that can be said in the way of a general standard is that reasonable compensation should be allowed. State v. Republic Steel Corp., 47 N.J. Super. 248, 252 (App. Div. 1957); In re Bloomer's Estate, 43 N.J. Super. 414, 416 (App. Div. 1957); In re Broad Street National Bank of Trenton, 37 *377 N.J. Super. 171, 174 (App. Div. 1955); In re Bloomer's Estate, 37 N.J. Super. 85 (App. Div. 1955).
In fixing fees the measure of allowance is not the amount which the client has paid or that which, in strict law, he could be obliged to pay. The award of reasonable fees may be larger or smaller than the attorney could expect from his clients. Apart from contract, statute or rule of court, a litigant must pay his own counsel fee. Texas Pipe Line case, supra (33 N.J. Super. at page 15). The aim is not to make the client whole, but to fix the amount of fees and costs at an amount which is reasonable in the circumstances. See Westinghouse Elec. Corp. v. Local No. 449, etc., C.I.O., 39 N.J. Super. 438 (Ch. Div. 1956); Texas Pipe Line Co. v. Snelbaker, 33 N.J. Super. 11 (App. Div. 1954).
Although we have the power to make new or amended findings, R.R. 1:5-4(b), we find no basis for the exercise of our discretionary power in view of the record which discloses no manifest abuse of discretion. In re Bloomer's Estate, 43 N.J. Super. 414, 416 (App. Div. 1957).
Affirmed without costs.